# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMES DIETZ, Administrator of the Estates of JOHN KENNETH LALLO, SR., Deceased, and DIANA CHRISTINE CEO LALLO, Deceased, et al.,** | : : : : : | **CIVIL ACTION** |
| Plaintiffs | : : | |
| vs. | : : | NO. 15-4324 |
| **AVCO CORP., et al.,** | : : | |
| Defendants | : | |

## M E M O R A N D U M

**STENGEL, J.**                                                                                                   **March 10, 2016**

This action involves the crash of a private plane in Kansas City, Missouri, and the resultant death of its pilot and his wife. The decedents' estates and family originally filed this action in the Court of Common Pleas of Philadelphia County, alleging various state claims against four sets of defendants.[1] The Continental Defendants timely removed the case here alleging diversity jurisdiction under 28 U.S.C. § 1332, removal jurisdiction under 28 U.S.C. § 1441, and federal officer removal jurisdiction under 28 U.S.C. § 1442. The plaintiffs have filed a timely motion to remand based primarily on the forum-

---

[1] The plaintiffs refer to one of the sets as the Lycoming Defendants which includes Defendants Avco Corporation, Lycoming Engines, and Avco Lycoming-Textron Williamsport. See Compl. ¶¶ 6-8. Another set is referred to as the Continental Defendants, which in addition to several voluntarily-dismissed defendants, includes Defendants Continental Motors, Inc. and Teledyne Continental Motors, Inc. Id. ¶¶ 13-19. The plaintiff refers to a third set as the Interface Defendants which includes Defendants Interface Performance Materials, Inc., Interface Solutions, Inc., and New ISI, Inc. Id. ¶¶ 28-30. Finally, the fourth set includes only one defendant, i.e., Quality Aircraft Accessories, Inc. Id. ¶ 37.

defendant rule of 28 U.S.C. § 1441(b)(2).[2] The Continental Defendants strongly oppose this motion. For the following reasons, I will grant the motion and remand this action to the Court of Common Pleas of Philadelphia County.

## I. BACKGROUND

Decedent John Lallo, Sr., was a pilot and owner of a Mooney M20J-201 aircraft. On August 18, 2013, Mr. Lallo and his wife Diana were taking off from the Charles B. Wheeler Downtown Airport in Kansas City, Missouri. When the aircraft reached several hundred feet, the engine failed allegedly because the magneto housing rotated and adversely changed engine timing. Mr. Lallo carefully attempted to return to the airport, but unfortunately could not, and it crashed resulting in his death and the death of his wife. The complaint alleges that the cause of the crash was engine failure due to the improper and inadequate Continental Motors magneto, ignition system, attachment system, the gasket interface, and the clamps that hold it in place.

On July 22, 2015, the plaintiffs filed this complaint in the Court of Common Pleas of Philadelphia County, alleging strict liability; negligence; breach of warranty; breach of contract; negligent infliction of emotional distress; concert of action, recklessness, outrageousness, willful and wanton conduct; and fraud, misrepresentation, and concealment. None of these claims involves a federal question.

---

[2] Title 28 of the United States Code, Section 1441(b)(2) provides: A civil action otherwise removable solely on the basis of the jurisdiction under section 1332(a) of this title [28 USCS § 1332(a)] *may not be removed* if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought. 28 U.S.C. § 1441(b)(2) (emphasis added).

## II. LEGAL STANDARD

Federal courts are of limited jurisdiction, and may only decide cases consistent with the authority afforded by the Constitution or statutes of the United States. Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 378 (1994). Defendants in state court actions have a statutory right to remove "any civil action brought in a state court of which the district courts of the United States have original jurisdiction . . . to the district court . . . embracing the place where such action is pending." 28 U.S.C. § 1441(a). Federal district courts have original (subject matter) jurisdiction over all civil actions between citizens of different states when the amount in controversy exceeds $75,000.00, excluding interest and costs. See 28 U.S.C. § 1332(a).

As the party asserting jurisdiction, the defendants have "the burden of showing at all stages of the litigation that the case is properly before the federal court." Frederico v. Home Depot, 507 F.3d 188, 193 (3d Cir. 2007); see also Boyer v. Snap-On Tools Corp., 913 F.2d 108, 111 (3d Cir. 1991) (The defendant bears the burden of establishing removal jurisdiction and demonstrating compliance with all pertinent procedural requirements). Removal statutes "are to be strictly construed against removal and all doubts should be resolved in favor of remand." In re Briscoe, 448 F.3d 201, 217 (3d Cir. 2006).

The process for removal is governed by 28 U.S.C. § 1446. A defendant seeking removal of an action must file a notice of removal with the district court within thirty days of service of the complaint upon the defendant. See 28 U.S.C. § 1446(b)(1). When a civil action is removed under Section 1441(a), all defendants who have been properly

joined and served must join in or consent to the removal of the action. See 28 U.S.C. § 1446(b)(2)(A).

## III. DISCUSSION

The plaintiffs filed a motion to remand this action to the Court of Common Pleas of Philadelphia County, arguing that this action does not involve federal officer jurisdiction, that the removal process was procedurally defective, and that the forum-defendant rule prohibited removal. I agree.

There are limited grounds for remand. Remand to the state court is appropriate for "(1) lack of district court subject matter jurisdiction or (2) a defect in the removal process." PAS v. Travelers Ins. Co., 7 F.3d 329, 352 (3d Cir.1993). If a federal court determines that it does not have subject matter jurisdiction over a removed action, or if the proper removal procedures were not followed by the defendant, the court must remand the action to state court. See 28 U.S.C. § 1447(c); Balazik v. County of Dauphin, 44 F.3d 209, 213 (3d Cir. 1995).

### A. Federal Officer Jurisdiction

In the Notice of Removal, the Continental Defendants indicated that this action was "removable pursuant to 28 U.S.C. § 1442(a)(1)[3] because, at all relevant times,

---

[3] Title 28 of the United States Code, Section 1442(a)(1) provides that "A civil action or criminal prosecution that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending: (1) The United States or any agency thereof or any officer (*or any person acting under that officer*) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue." (Emphasis added).

4

[Continental Motors, Inc.] acted as an officer of the United States under color of such office." See Document #1.  I disagree.

Certainly, the Continental Defendants are persons within the meaning of the statute.  It is well settled that such corporations qualify as persons under the statute and may seek removal accordingly.  See 1 U.S.C. § 1 ("in determining the meaning of any Act of Congress, unless the context indicates otherwise . . . the words 'person' and 'whoever' include corporations, companies, and associations"); see also Good v. Armstrong World Industries, Inc., 914 F. Supp. 1125, 1128-29 (E.D. Pa. 1996) (finding that a corporation is a person under Section 1442(a)(1)).

Whether the defendants were "acting under a federal officer," however, is far from certain.  The Continental Defendants argue that in performing the complaint's alleged conduct, they acted pursuant to 49 U.S.C. § 44702(d), which provides that the FAA

> may delegate to a qualified private person or to an employee under the supervision of that person, a matter related to: (A) the examination, testing, and inspection necessary to issue a certificate under this chapter [49 U.S.C. §§ 44701, *et seq.*]; and (B) issuing the certificate.

Their alleged actions, they insist, were performed pursuant to a comprehensive and detailed set of regulations, and thus they acted under color of a federal officer in performing those alleged actions.

The federal officer removal statute extends removal authority only to persons acting under an officer of the United States.  See International Primate Protection League v. Administrators of Tulane Educ. Fund, 500 U.S. 72, 80 (1991).  A private person acting under a federal officer must assist or help carry out the duties or tasks of the federal

5

superior. See Watson v. Philip Morris Companies, Inc., 551 U.S. 142, 152 (2007). It is not enough for a defendant to show that the relevant acts occurred under the general auspices of a federal officer. Good, 914 F. Supp. at 1128.

In Watson, the Supreme Court held that the fact that a federal regulatory agency "directs, supervises, and monitors" a company's activities in considerable detail neither brings that company "within the scope of the italicized language ('*acting under*' an '*officer*' of the United States)" nor permits removal. Watson, 551 U.S. at 145. Plaintiff Lisa Watson filed a class action lawsuit against Defendant Philip Morris, claiming that the company violated Arkansas law by misrepresenting the amount of tar and nicotine in cigarettes branded as "light." Id. at 146. The defendant removed the case to federal court on the basis that it was acting under the direct control of regulations promulgated by the Federal Trade Commission, triggering the application of Section 1442(a)(1). Id. The district court denied the plaintiff's motion to remand, and the Eighth Circuit Court of Appeals affirmed. Id. at 147. The Eighth Circuit noted "unprecedented" government involvement in the tobacco industry, including detailed Federal Trade Commission regulations concerning the testing and disclosure of tar and nicotine levels. Id. The court concluded that the defendant was "acting under a federal officer" and consequently entitled to remove the case to federal court. Id.

The Supreme Court reversed. The Court acknowledged the requirement to broadly construe Section 1442(a)(1), but stated that such construction is not without boundaries. Id. "[B]road language is not limitless. And a liberal construction nonetheless can find limits in a text's language, context, history, and purposes." Id. The

6

Court warned against granting manufacturers access to federal courts merely because of their participation in highly regulated industries, which is a result Congress never intended:

> In our view the help or assistance necessary to bring a private person within the scope of the [federal officer removal] statute does not include simply *complying* with the law.
>
> . . .
>
> The upshot is that a highly regulated firm cannot find a statutory basis for removal in the fact of federal regulation alone. A private firm's compliance (or noncompliance) with federal laws, rules, and regulations does not by itself fall within the scope of the statutory phrase "acting under" a federal "official." And that is so even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored. A contrary determination would expand the scope of the statute considerably, potentially bringing within its scope state-court actions filed against private firms in many highly regulated industries. Neither language, nor history, nor purpose lead us to believe that Congress intended any such expansion.

Watson, 551 U.S. at 152-53 (emphasis in original). The Court concluded that "the degree of regulatory detail or supervision cannot by themselves transform Philip Morris' regulatory compliance into the kind of assistance that might bring the FTC within the scope of the statutory phrase 'acting under' a federal 'officer.'" Id. at 157. The Court made clear in Watson that a company does not "act under" the color of a federal officer merely by complying with federal law and regulations in a heavily regulated industry. Watson, 551 U.S. at 153, 157.

Since Watson, several district courts have confronted similar arguments for removal in the aviation context. The vast majority of those courts have remanded the

7

cases to state court. See, e.g., Vandeventer v. Guimond, 494 F. Supp. 2d 1255, 1267 (D. Kan. 2007) (defendant did not stand in the shoes of the FAA, or act under a federal officer or agency, when he conducted the airworthiness inspection and certification); Swanstrom v. Teledyne Continental Motors, Inc., 531 F. Supp. 2d 1325, 1333 (S.D. Ala. 2008) (defendant cannot claim removal under Section 1442(a)(1) simply because it has employees who are designated FAA authorized agents); Glein v. Boeing Co., No. 11-cv-47, 2011 U.S. Dist. LEXIS 12466 (S.D. Ill. Feb. 8, 2011) (defendant is not entitled to removal given an improper assertion of the government contractor defense); L-3 Communications Corp. v. Serco Inc., 39 F. Supp. 3d 740, 750 (E.D. Va. 2014) (removal under Section 1442(a)(1) is not proper when the defendant had near full discretion over subcontract award decisions and was therefore not "acting under" color of a federal officer); Brokaw v. Boeing Co., No. 15-cv-4727, 2015 U.S. Dist. LEXIS 137074 (N.D. Ill. Oct. 5, 2015) (noting that numerous other courts have found federal officer jurisdiction lacking where, as here, there was some tangential involvement by the federal government, but the private defendant made the actual decisions that formed the basis of the plaintiff's claims).

All other decisions that have denied motions to remand involved the assertion of the government contractor defense. See, e.g., Beckwith v. Gen. Elec. Co., No. 09-cv-0216, 2010 U.S. Dist. LEXIS 30360 (D. Conn. Mar. 30, 2010) (denying motion to remand as defendant properly alleged government contractor defense); Boyd v. Boeing Co., No. 15-cv-0025, 2015 U.S. Dist. LEXIS 91226 (E.D. La. July 14, 2015) (also denying motion to remand as defendant adequately alleged government contractor

8

defense). The Court in Watson distinguished the government contractor defense from compliance as "the assistance that private contractors provide federal officers goes beyond simple compliance with the law and helps officers fulfill other basic governmental tasks." Watson, 551 U.S. at 153. Here, the Continental Defendants have not asserted a government contractor defense.

The plaintiffs also properly rely on Lu Junhong v. Boeing, where the Seventh Circuit Court of Appeals was tasked with determining whether Boeing was entitled to removal under Section 1442(a)(1) because "federal regulations require it to assess and certify the airworthiness of its planes." 792 F.3d 805, 808 (7th Cir. 2015). The court held that it was not. Id. at 810.

On July 6, 2013, a Boeing aircraft attempting to land at San Francisco International Airport hit the seawall that separates the ocean from the end of the runway. Id. at 807. Three passengers died in the crash and many more were seriously injured. Id. Some of the passengers sued Boeing in Illinois state courts, but Boeing removed the actions to federal court. Id. at 808. The district court remanded them for lack of subject matter jurisdiction, and Boeing appealed. Id.

On appeal, Boeing argued that it was acting under the FAA because: (1) "the FAA has granted Boeing authority to use FAA-approved procedures to conduct analysis and testing required for the issuance of type, production, and airworthiness certifications for aircraft under Federal Aviation Regulations;" and (2) "FAA Order 8100.9A authorizes and requires it to analyze the adequacy of its autopilot and autothrottle systems and certify that they meet the regulatory requirements of 14 C.F.R. § 25.1309." Id. It was

9

implied by Boeing that its FAA certification was enough to meet the "acting under" requirement.

The Seventh Circuit disagreed. The court found that "certifications just demonstrate a person's awareness of the governing requirements and evince a belief in compliance." Lu Junhong, 792 F.3d at 808. Moreover, "[a] figure of speech [referring to certifications] does not make someone a federal officer or a person 'acting under.'" Id. Instead, the court stated, "[W]e know from Watson v. Philip Morris Cos., 551 U.S. 142 (2007), that being regulated, even when a federal agency 'directs, supervises and monitors a company's activities in considerable detail' (id. at 145), is not enough to make a private firm a person 'acting under' a federal agency." Lu Junhong, 792 F.3d at 809.

The court continued:

> Judges often call lawyers 'officers of the court,' but no one should think this means that a lawyer can use § 1442 to remove a state-law malpractice suit to federal court."
> . . .
> Every regulated firm must use its own staff to learn whether it has satisfied federal regulations. The staff of an electric utility running a coal-fired generation station must ensure that the equipment (much of it covered by detailed regulations) meets the EPA's specifications (and those of the host state) and is in working order. The staff also must monitor the stack gasses to ensure that the plant does not emit too much sulfur dioxide or particulate matter. It is a detail whether the firm sends the EPA a report (a "self-certification") of compliance, or instead sends reports only when it finds non-compliance, or sends no reports at all and waits for inspectors to appear. Likewise with safety apparatus (and safety inspections) under the Occupational Safety and Health Act and hundreds of other federal statutes. We do not see any correlation between the required certifications and acting-under status. The Supreme Court in Watson gave, as one example of someone

10

> obviously not "acting under" a federal agency, a person filing a tax return. 551 U.S. at 152. Yet the taxpayer must interpret and apply a complex statute and voluminous regulations, and the end of every return is a certification that this has been done and all income (and deductions) reported honestly. That process of self-reporting enables the IRS to have a smaller workforce, just as Boeing's procedures cut the FAA's payroll, but if taxpayers (and lawyers who certify that their briefs comply with rules) are not covered by § 1442, neither is Boeing.
>
> The list of people who have to certify things is exceedingly long. For example, every employer with a federal contract must certify that it has paid workers the prevailing wage. See 29 C.F.R. §§ 3.3, 3.4; United States v. Clark, 787 F.3d 451 (7th Cir. 2015). We doubt that the Justices would see a dispositive difference between certified compliance and ordinary compliance. Indeed, Watson rejected an argument by the cigarette maker that a federal agency hadn't "just" required compliance with regulations but also had "delegated authority" to the manufacturer to determine compliance with those regulations. The Court thought that inadequate to make the manufacturer a person "acting under" the agency. 551 U.S. at 154–57.

Lu Junhong, 792 F.3d at 808, 809-10.

Here, the plaintiffs' claims against the Continental Defendants concern the magneto and ignition system the defendants designed and manufactured. These claims arise, however, from the Continental Defendants' duty to comply with the applicable regulatory requirements and standards of care. Congress never intended to afford the Continental Defendants federal officer status through their compliance with federal laws, rules, and regulations, even if the regulations are highly detailed and even if the defendants' activities are highly supervised and monitored. Watson, 551 U.S. at 152.

11

Accordingly, I conclude that the Continental Defendants have failed to establish that they "acted under" a federal officer for purposes of Section 1442(a)(1) removal.

### B. Unanimity Rule

Next, I must agree with the plaintiffs that the removal of this action is procedurally defective. Though it indicates that it had the consent of the Lycoming Defendants, the Continental Defendants, and Defendant Qualified Aircraft Accessories, the notice fails to mention the three Interface Defendants who are citizens of Pennsylvania. Clearly, the Continental Defendants were aware that the Interface Defendants had been served before filing the Notice of Removal, because the Interface Defendants were included on the notice's Certificate of Service dated August 5, 2015.[4] "In order for removal to be proper, all defendants must unanimously join or consent to the removal through a timely-filed, express written indication of consent." Lewis v. Consolidated Freightways Corp. of Del., No. 04-cv-6102, 2005 U.S. Dist. LEXIS 3248, at *5 (E.D. Pa. Feb. 28, 2005); see also Weinrach v. White Metal Rolling and Stamping Corp., No. 98-cv-3293, 1999 U.S. Dist. LEXIS 168, 2 (E.D. Pa. Jan 6. 1999) (unanimity may be established by joint filing or by separate filings by the defendants consenting to removal); Lewis v. Rego Co., 757 F.2d 66, 68 (3d Cir. 1985); Balazik v. County of Dauphin, 44 F.3d 209, 213 n.4 (3d Cir. 1995). This rule is known as the "unanimity rule." North Penn Water Auth. v. BAE Systems, No. 04-cv-5030, 2005 U.S. Dist. LEXIS 10210, *15 (E.D. Pa. May 25, 2005).

---

[4] In their response to the motion to remand, the Continental Defendants incorrectly argue that the Interface Defendants cannot defeat removal because they had not been served at the time the Continental Defendants filed its Notice of Removal. That the Interface Defendants were included on the Notice's Certificate of Service proves otherwise.

12

To satisfy the "timely-filed" requirement of the unanimity rule, all defendants must act to confer consent within the thirty-day period set forth in 28 U.S.C. § 1446(b) and courts are without authority to expand this time period. Alves v. Eagle Crane Serv., Inc., No. 05-cv-6699, 2006 U.S. Dist. LEXIS 21042, at *5-6 (E.D. Pa. Apr.19, 2006). The general requirement of unanimity may be disregarded only where (1) the non-joining defendant is a nominal party; (2) a defendant [has] been fraudulently joined; or (3) a non-resident defendant has not been served at the time the removing defendants filed their petition. Lewis, 2005 U.S. Dist. LEXIS 3248 at *6.

Here, in their Notice of Removal, the Continental Defendants argued only that Plaintiff John K. Lallo, Jr., and the "voluntarily-dismissed defendants[5]" were fraudulently joined. They argued that Mr. Lallo, the decedents' son and a citizen of Florida, was joined only to defeat diversity of citizenship where several defendants are also citizens of Florida. The Continental Defendants also argued that the plaintiffs fraudulently joined the voluntarily-dismissed defendants because the plaintiffs had no intention of pursuing a claim against them or recovering from those entities. The Continental Defendants failed, however, to even mention the Interface Defendants, and thus, there is no evidence that the Interface Defendants were even consulted on the removal. Accordingly, the required unanimity is lacking.

Further, at the time of removal, there was no written evidence of consent from any of the defendants. "While courts generally do not require all defendants to sign the

---

[5] On January 4, 2016, the plaintiff voluntarily dismissed, *inter alia*, Defendants Bendix, Unison Industries, LLC, and Unison Industries, Inc. See Document #40. The Continental Defendants argued that these defendants were fraudulently joined.

13

removal petition itself, most courts have required some form of unambiguous written evidence of consent to the court in timely fashion." Michaels v. N.J., 955 F. Supp. 315, 321 (D.N.J. 1996) (quoting Roe v. O'Donohue, 38 F.3d 298, 301 (7th Cir. 1994)). In other words, there must be some "written indication from each defendant, or some person or entity purporting to formally act on its behalf in this respect and to have authority to do so, that it has actually consented to such action." Ogletree v. Barnes, 851 F. Supp. 184, 188 (E.D. Pa. 1994); see also Morganti v. Armstrong Blum Mfg. Co., No. 00-cv-6343, 2001 U.S. Dist. LEXIS 2951, at *2 (E.D. Pa. Mar. 19, 2001) (consent to join a notice of removal must be express, official, and unambiguous).

Here, the Continental Defendants mentioned in the Notice of Removal that they had the consent of Defendants Allied-Signal, AVCO Corporation, Bendix Corporation, Continental Motors, Honeywell International, Quality Aircraft Accessories, Unison Industries, Inc., and Unison Industries, LLC, but that is insufficient. None of the defendants filed any express written consent to the removal until well over a month after the Notice of Removal had been filed, and two weeks after the plaintiffs' motion to remand had been filed. See Documents #23, 24, and 25. Then, counsel for the Lycoming Defendants, for Defendant Quality Aircraft Accessories, and for the voluntarily-dismissed defendants attempted to cure the deficiency by submitting representations to the court that they, in fact, had been contacted by counsel for the Continental Defendants and had given their consent to the removal prior to the filing of the Notice of Removal. See Documents #23, 24, and 25. The failure to submit written consent within the thirty-day deadline and the failure to satisfy the unanimity rule are procedural defects. This

deadline may not be expanded by the court.  See Alves, 2006 U.S. Dist. LEXIS 21042 at *5-6; see also Ogletree, 851 F. Supp. at 190 ("While a few courts have allowed non-signing defendants to submit affidavits of consent after the thirty-day period had expired, it is well-settled in this district that '[t]he thirty-day limitation is mandatory and the court is without authority to expand it.'")  Accordingly, because I find no basis on which to excuse the failure to comply with the rule of unanimity by obtain the timely, written consent of all the defendants, removal of this action is improper, and Section 1446(b) requires that it be remanded to the state court.

### C. Forum-Defendant Rule Prohibits Removal

Even if the removal procedure were not defective, there would still be a basis to remand this action.  The plaintiffs move to remand based on the forum-defendant rule's bar to the removal of cases.  Title 28 of the United States Code, Section 1441(b)(2) provides that "[a] civil action otherwise removable solely on the basis of [diversity jurisdiction] may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."  See Blackburn v. United Parcel Service, Inc., 179 F.3d 81, 90 n.3 (3d Cir.1999) (an action can be removed on the basis of diversity jurisdiction "only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.")

Here, the complaint indicates that at least three[6] of the defendants are citizens of Pennsylvania. Having found that this action involves no federal question and that federal officer jurisdiction is not available to the defendants, I find that removal could only have been based on diversity jurisdiction. Given the fact that three defendants are citizens of the state in which this action was brought, removal would generally be barred by the additional requirement in diversity cases that Section 1441(b) imposes.

In their response to the motion to remand, however, the Continental Defendants argue that the Interface Defendants cannot defeat removal because they were fraudulently joined or are nominal parties. They insist that there was no reasonable basis in fact or colorable ground supporting the plaintiffs' claims against the Interface Defendants. I do not agree.

Joinder is fraudulent if "there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant or seek a joint judgment." In re Briscoe, 448 F.3d 201, 216 (3d Cir. 2006) (quoting Abels v. State Farm, 770 F.2d 26, 32 (3d Cir. 1985)). But, "if there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court." Boyer v. Snap-On Tools Corp, 913 F.2d 108, 111 (3d Cir. 1990) (quoting Coker v. Amoco Oil Co., 709 F.2d

---

[6] The complaint alleges that two other defendants are citizens of Pennsylvania, but the citizenship of those two defendants is disputed by the Continental Defendants. That dispute is irrelevant here given the presence of the three defendants whose Pennsylvania citizenship is not disputed.

1433, 1440-41 (11th Cir. 1983)). Because a party who urges jurisdiction on a federal court bears the burden of proving that jurisdiction exists, a removing party who charges that a plaintiff has fraudulently joined a party to destroy diversity of jurisdiction has a "heavy burden of persuasion." Boyer, 913 F.2d at 111 (citing Steel Valley Author. v. Union Switch & Signal Div., 809 F.2d 1006, 1012 n.6 (3d Cir. 1987)); see also Batoff v. State Farm Ins. Co., 977 F.2d 848, 851 (3d Cir. 1992) (the burden of persuasion on a defendant asserting fraudulent joinder is "heavy"). Examination of a plaintiff's claims is less probing than on a motion to dismiss. Moore v. Johnson & Johnson, 907 F. Supp. 2d 646, 662 (E.D. Pa. 2012). A claim that survives fraudulent joinder scrutiny may ultimately be dismissed on a Rule 12(b)(6) motion. Batoff, 977 F.2d at 852. A fraudulent joinder analysis requires the district court to ask only whether the plaintiff's claims are "wholly insubstantial and frivolous." Id. Courts have cautioned that a "[f]raudulent joinder should not be found simply because plaintiff has a weak case against a forum or non-diverse defendant." Slater v. Hoffman La Roche Inc., 771 F. Supp. 2d 524, 528 (E.D. Pa. 2011). When determining whether a party has been fraudulently joined, the district court must "focus on the plaintiff's complaint at the time the petition for removal was filed . . . and assume as true all factual allegations of the complaint." Batoff, 977 F.2d at 851.

     A review of the complaint reveals that the removing defendants have failed to carry their heavy burden of persuasion of proving that jurisdiction here exists. In the complaint, the plaintiffs bring four claims against the Interface Defendants, including strict liability (Count VII), negligence (Count VIII), breach of warranty (Count IX) and

17

negligent infliction of emotional distress (Count XIV). The plaintiffs claim that the Interface Defendants "designed, manufactured, tested, inspected, trained, advertised, marketed, warranted, distributed, licensed, sold, supplied, overhauled, and/or rebuilt gaskets used to interface between the magneto and engine accessory case." See Compl. ¶ 33; see also ¶¶ 191-222. In performing those responsibilities, the plaintiffs claim, the Interface Defendants owed the plaintiffs various duties, including the duties to act as reasonably prudent manufacturers, designers, sellers, suppliers, overhaulers, repair stations, and maintenance facilities, and distributors of the magneto gasket. The plaintiffs further allege that the Interface Defendants breached those duties, and the breach of those duties proximately caused the deadly accident. The plaintiffs insist that discovery will show that the Interface Defendants provided magneto gasket material for various manufacturers, including Lycoming, Superior Air Parts, Engine Components, and Slick.

Accepting all the plaintiffs' factual allegations as true, I cannot say that there was no reasonable basis in fact or colorable ground supporting the claims against the Interface Defendants at the time the Notice of Removal was filed. There is unquestionably a possibility that the Pennsylvania state courts would find that this complaint states a cause of action against the Interface Defendants. Thus, because these claims are not wholly insubstantial and frivolous, I find that the Interface Defendants were not fraudulently joined.

The Continental Defendants next argue that it was unnecessary to get the consent of the Interface Defendants because they are nominal parties. A nominal party "is defined as one neither necessary nor indispensable to the suit. A party is necessary and

indispensable to the suit if the plaintiff states a cause of action against the party, and seeks relief from the party." Isaac v. Mitchell, 08-cv-2505, 2008 U.S. Dist. LEXIS 57355, *4 (E.D. Pa. July 25, 2008). Again, I am constrained to disagree.

The plaintiffs have not only stated causes of action against the Interface Defendants, but explicitly have sought relief from the Interface Defendants, jointly and severally, for compensatory and punitive damages in an amount in excess of Fifty Thousand Dollars plus interest, costs, and attorney's fees on four different theories of liability. Under those circumstances, the Interface Defendants cannot be considered nominal parties. Accordingly, because the removing defendants have failed to show that the Interface Defendants were either fraudulently joined or nominal parties, removal of this action unquestionably violated the forum defendant rule. I will grant the motion to remand this case to the Court of Common Pleas of Philadelphia County.

The plaintiffs finally argue that they are entitled to "attorney's fees, costs, and expenses" as contemplated in 28 U.S.C. § 1447(c). The Supreme Court instructed that "[t]he appropriate test for awarding fees under § 1447(c) should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied." Martin v. Franklin Capital Corp., 546 U.S. 132, 140 (2005). Courts may award attorneys' fees, costs, and expenses "where the removing party lacked an objectively reasonable basis for seeking removal." Id. at 141. Finding no evidence that the Continental Defendants were

19

attempting to prolong this litigation or to impose costs on the plaintiffs, I will decline the plaintiffs' request for attorney's fees, costs, and expenses.

    An appropriate Order follows.